FILED
97 MAR 24 AM 9:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| LEROY F. MICHELS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CV 96-PT-0102-S |
| | ) |
| BROWN GROUP, INC., d/b/a BROWN SHOE COMPANY, | ) |
| | ) |
| Defendant. | ) |

ENTERED
MAR 2 4 1997

## Memorandum Opinion

This cause comes on to be heard on a motion for summary judgment filed by the defendant, Brown Group, Inc., d/b/a Brown Shoe Company ("Brown") on December 27, 1996. In its motion, the defendant contends that no reasonable trier of fact could find either that the plaintiff, Leroy F. Michels ("Michels"), was discriminated against on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA") or that Brown violated the Alabama Sales Representative's Commission Contracts Act in converting Michels from a commissioned employee to a salaried employee in December 1992.

On a motion for summary judgment, the court must assess the proof to ascertain whether there is a genuine need for trial. Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the grounds for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing there exists a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any..." in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In resolving whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

In light of the above, this court must examine the evidence to determine the existence of a genuine issue of material fact.

## Facts

The primary claim in instant cause arises out of a situation occurring within Brown, in which Brown, a shoe manufacturer, merged the sales force of its Connie women's shoe division with that of its Life Stride women's shoe division. In 1994, the Connie division was losing sales volume, while Life Stride continued to sell well. As a result, Brown decided to test whether consolidation of the sales of both shoe lines would return Connie to profitability.

In August 1994, at a quarterly sales meeting, Michels, a salesman in the Life Stride division since 1959, spoke out against the sales merger of the two lines. The plaintiff's supervisor, Mal Murphy ("Murphy") was disturbed by the plaintiff's remarks, he having told the salesmen that the merger would work. In response to Michels's actions, Murphy allegedly prepared a written reprimand. Under the company policy, a reprimand is required to be placed in the company file

and shown to the employee. Allegedly, the plaintiff was never shown a copy of the reprimand nor was he told of the reprimand. After the meeting, the plaintiff allegedly had a one-on-one meeting with Murphy in which the plaintiff allegedly explained that he had no desire to sell Connie shoes and that he would prefer to be allowed to retire early with full benefits. The plaintiff contests that he made the statements. Instead, states the plaintiff, he was asked by Murphy whether he would consider early retirement. Brown decided to consolidate the two shoe lines.

The plaintiff alleges that Jeff Sanders, the Vice-President and General Manager of the Life Stride Division, made numerous remarks concerning the age of the sales force for Life Stride and Connie shoes. Allegedly, Sanders would state at company sales meetings that there was "too much gray hair" among the sales force and, in the August sales meeting, he allegedly stated that if the merger of the Life Stride shoes and the Connie shoes did not create sales, he would replace the sales force with "young bucks," who could be employed more cheaply. Another former employee of Brown, John R. Darrah, the only independent salesperson older than the plaintiff in charge of a Life Stride account, claims that he heard Sanders speak of replacing the older employees with younger individuals and that Sanders referred to him as an "old fart" and a "gray-haired old man." Sanders, the plaintiff also alleges, had ultimate supervisory authority over the decision to terminate him and Darrah in the reduction of force. The defendant maintains that Sanders played no role in the reduction-in-force plan and that the decision to remove Michels was made entirely by Murphy and Greg Tunney ("Tunney").

In or around November 1994, Murphy allegedly phoned the plaintiff and Darrah and inquired whether they intended to retire soon. He allegedly made no similar phone calls to the younger independent salesmen, such as Ed Leuty.

On November 15, 1994, Michels and Darrah,[1] Life Strides' two oldest independent sales representatives were terminated. The person who assumed the plaintiff's territory was John Montgomery, an individual 48 years of age who had previously handled the Connie line of shoes.

The reasons allegedly given by Murphy and Tunney for the decision are (1) the plaintiff's alleged outburst over being required to sell Connie shoes at the August sales meeting, (2) an alleged statement by plaintiff that he would rather retire early than sell Connie shoes, and (3) a belief of Tunney that the plaintiff had poor relations with two of his accounts, Caster-Knott and Proffitt's.

---

[1] Darrah was 65 years of age.

3.

The plaintiff also alleges that after December 1992, Brown denied him commissions on shoes sold to accounts in the year of 1992. The company does not dispute that after December of 1992, it did not pay commissions on shoes sold in 1992, but it states that it never paid commissions on shoes sold until they were actually delivered. In January 1993, Brown stopped paying its employees on commission and began to pay salary. Because many of the shoes sold in 1992 were not delivered until December 1, 1992, defendant argues that commissions were not required to be paid on those shoes allegedly sold by the sales agents in 1992.

To be gracious, the defendant suggests, Brown decided to pay its employees the difference between what they would have earned in commission and the salary that they earned in 1993. Michels, for one, received, in his salary and "commission substitute" an amount equal to what he would have received from the company in Spring 1993 in commissions.

One employee, who retired in December 1992, received commissions for his sales in late 1992. The plaintiff claims at the time that the switch from commission pay to salary pay was being made, Sanders stated that the petitioner would only receive his commissions if he quit.

## Contentions

The plaintiff contends that, in terminating him, the defendant discriminated against him in violation of the ADEA. First, the plaintiff contends, Sander's remarks constitute direct evidence of discriminatory intent attributable to Brown. The defendants deny this, stating that Sanders was not involved in the termination of the plaintiff and that the termination was entirely decided by Murphy and Tunney. Because, he was not the decision-maker, defendant argues, Sanders did not taint the decision-making process through his remarks, because his comments constitute little more than stray remarks that are not probative of any age animus.

Second, contends the plaintiff, he has established a prima facie case of discrimination under the McDonnell-Douglas scheme for demonstrating discriminatory animus in the termination of an employee. Under the McDonnell-Douglas scheme to demonstrate that he was terminated on the basis of age, a prima facie case is shown when a plaintiff demonstrates that he was a member of a protected group of persons between the ages of forty and seventy, who was terminated, replaced by someone younger, and who was qualified to perform the job. Jameson v. Arrow Co., 75 F.3d 1528,

1531 (11th Cir. 1996). Michels contends that no other opportunities at the company were offered to him, nor was he given any career placement services by the company. Michels, who is 61, alleges that he was replaced by John Montgomery, who was 48 years of age, and that he was better qualified for the position than Montgomery, in that he had better sales and in that he had more experience. The plaintiff states that he consistently had one of the highest sales levels of the independent sales agents.

The defendant responds, first, that Murphy did not solicit the plaintiff's retirement in calling Michels a week before his termination and inquiring whether Michels had any intention of leaving the company. Second, the defendant argues, Michels was released pursuant to a legitimate reduction-in-force, not by termination. Brown allegedly had released account executives from both Connie and Life Stride divisions in order to accomplish competitive downsizing. Thus, argues Brown, the plaintiff could not have been replaced by someone younger—he was not replaced. The conversion from commission to salary in 1992 does not indicate age discrimination against the plaintiff either, Brown argues.

Third, the plaintiff contends, he can demonstrate a _prima facie_ case of discriminatory animus through the proof scheme established by Eleventh Circuit Court of Appeals to be used in reduction-in-force cases. Jameson v. Arrow Co., 75 F.2d at 1532. To make out a _prima facie_ case, a plaintiff must show that he was a member of the protected class who was qualified for his position, but who was subject to an adverse employment decision and the plaintiff must present evidence from which a reasonable trier of fact could find discriminatory animus. Such evidence, states Michels, includes the age related statements allegedly made by Sanders, Murphy's alleged interest in Michel's retirement one week before Michel's termination and the willingness of the company to withhold commissions to encourage early retirement.

The defendant argues that it has articulated legitimate nondiscriminatory reasons for the layoff because Murphy believed that the plaintiff was not a team player, as evidenced by his alleged outburst at the conference and of statements allegedly made by Michels that he would rather retire early than sell Connie shoes, and because Tunney believed that the plaintiff was not well received by his clients.

The plaintiff states that these reasons are pretextual. First, Murphy and Tunney allegedly had objective criteria for the employment decision that the best independent salesperson in a territory would be kept selling both Connie and Life Stride shoes. The plaintiff states that,

according to those criteria, he should have been retained. However, he and Jack Darrah, the only other independent salesperson older than the plaintiff, were dismissed, although the other Life Stride independent salespersons were retained. Thus, states the plaintiff, Murphy used different criteria with respect to him. Second, the specific reasons given by Murphy rely on events that did not occur according to the plaintiff. Further, the reprimand given the plaintiff by Murphy because of the alleged incident was never shown to the plaintiff, contrary to company policy. Third, the beliefs of Tunney were not raised in the exit interview nor were they stated in Brown's EEOC response. The plaintiff argues that because the statements were never articulated until the lawsuit, an inference of pretext has been raised. Further, the statements of Tunney are, it is argued, hearsay. Finally, Tunney was Michel's supervisor for only six months, at the end of which Tunney praised his capacity as a salesperson.

The plaintiff argues also that the reduction-in-force had a disparate impact upon independent salespersons of Life Stride, in that the two oldest of the nine independent salespersons in the division were terminated in the reduction-in-force, while the rest were retained. The defendant responds that the plaintiff has failed to point out a specific, facially neutral policy which had the alleged disproportionate impact. Further, states the defendant, the sample size is too small to establish an adverse impact.

The defendant further argues that the plaintiff has not given any evidence that Sanders was involved in his termination. He has only demonstrated that, at best, Sanders might have approved it after the fact. After the fact ratification by a supervisor who has made nonspecific derogatory comments about older members of the workforce will not support direct evidence of discrimination.

## Analysis

There is a reasonable inference that the plaintiff was treated as an employee who was terminated without future employment opportunities with the company, rather than as an individual that the company had chosen to lay off. He was not provided access to the company's career counseling services, nor was he informed of any other positions that he might have been qualified to fill. An issue of triable fact remains as to whether the release of the plaintiff was an

outright termination or merely a layoff required by a legitimate reduction-in-force.

The reason supposedly offered by Tunney for the plaintiff's termination is based upon the hearsay testimony of Murphy. The other reasons for the termination offered by Brown are refuted by the plaintiff's contentions that none of the events referred to as reasons by Murphy ever occurred.

The court will deny the motion for summary judgment at this time as to the disparate treatment claim. The court will have to further focus on the evidence at trial. The Northern District of Alabama is inundated with employment discrimination cases of all varieties. Many lack merit. It is impossible, however, to reach final conclusions as to even all those which lack merit at the summary judgment stage. Many plaintiffs try to prove merely that they were treated unfairly and that they are in a protected category.

With respect to the disparate impact theory of the plaintiff, the court agrees with the defendant that no policy has been suggested as the source of the termination of older members of Life Stride's independent sales force. In fact, the plaintiff argues that Murphy and Tunney <u>diverged</u> from their objective termination policy in deciding to terminate him and Darrah. Individual divergence from a policy will not support a disparate impact theory.

The Alabama Commissions Contracts Act, Alabama Code of 1975 § 8-24-2(c), states, in relevant part:

> All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within thirty days after the date of termination.

The plaintiff contends that this section should be interpreted to mean that any commissions due him at the time of his termination should be paid him at that time, including commissions that were due at an earlier date but were never paid. The defendant argues that this statute should be interpreted to mean that an employer cannot refuse to pay commissions because of a discharge in employment. Commissions that would have been due under a previous commission contract that had been replaced by a salary contract from which the employee was later terminated are, Brown argues, unrecoverable. Thus, the issue is whether the employee is due all commissions owed him under all contracts with the employer at the time of termination or whether he is due only those commissions generated under the contract through which he is employed.

Since the court is not granting summary judgment as to the ADEA claim, it will not reach a decision as to this claim at this time. The parties should be prepared to further argue at trial.

7.

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment on the plaintiff's disparate treatment age discrimination claim will be **DENIED**. The motion with respect to the plaintiff's disparate impact claim will be **GRANTED**.

This 24th day of March 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE